Matter of Schuette v Consolidated Edison Co. of N.Y. (2024 NY Slip Op 01586)

Matter of Schuette v Consolidated Edison Co. of N.Y.

2024 NY Slip Op 01586

Decided on March 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 21, 2024

CV-22-1999
[*1]In the Matter of the Claim of Dennis Schuette, Appellant,
v
Consolidated Edison Company of New York et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:February 20, 2024

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Mackey, JJ.

Schotter Millican, LLP, Brooklyn (Geoffrey Schotter of counsel), for appellant.
Vecchione, Vecchione, Connors & Cano, LLP, Garden City Park (Michael F. Vecchione of counsel), for Consolidated Edison Company of New York and another, respondents.

Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed September 30, 2022, which, among other things, ruled that claimant was not entitled to a schedule loss of use award.
Claimant, a mechanic and welder, has an established claim for injury to his right wrist as a result of a workplace accident involving his use of a chipping gun on November 14, 2019. Claimant was diagnosed with a tear of the triangular fibrocartilage, among other conditions. He returned to work following the accident and, in March 2020, underwent surgery on his right hand and wrist by Mark Puzansky, an orthopedic surgeon. Claimant was thereafter advised by another physician that he had bilateral carpal tunnel syndrome in his wrists. Serge Menkin, an orthopedic surgeon who treated claimant for his 2019 injury, examined claimant on March 18, 2021 and submitted a report diagnosing him with right hand pain and limited range of motion, tendinitis and posttraumatic arthritis. Menkin concluded that claimant had reached maximum medical improvement (hereinafter MMI) for that injury and that he had sustained a permanent impairment for which he should receive a 73&frac13;% schedule loss of use (hereinafter SLU) award based upon the "severely restricted" range of motion in his right wrist. Menkin opined that claimant's severe range of motion deficits would have left him unable to perform tasks such as "opening containers, handling objects, using a hammer[,] a screwdriver [or] any instrument" and recommended that claimant only perform light duty and limit strenuous labor with his right hand. After Menkin submitted his report on permanency, claimant was tested and treated by other physicians for bilateral carpal tunnel syndrome. Then, in August 2021, claimant filed a separate C-3 claim against the same employer for the occupational disease of carpal tunnel syndrome, which he attributed to the repetitive use of machinery for 20 years as a mechanic.
Vito Loguidice, an orthopedic consultant retained by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier), conducted an independent medical examination (hereinafter IME) of claimant in September 2021, reviewed his medical records and submitted a report agreeing with Menkin's permanency, MMI and SLU opinions. The carrier raised the issue of fraud under Workers' Compensation Law § 114-a based upon claimant's failure to disclose his bilateral carpal tunnel diagnosis and treatment or his work activities at the time of his permanency examinations. At the ensuing January 2022 hearing, both claims were considered. Claimant testified that he was diagnosed with bilateral carpal tunnel syndrome [FN1] after his March 2020 surgery but before Menkin's March 2021 permanency evaluation, and that he was first treated for bilateral carpal tunnel in July 2021, before Loguidice's September 2021 permanency IME; according to claimant, testing after the IME confirmed the diagnosis. He further testified that he was still working [*2]for the employer as a mechanic and welder cleaning the yards and putting materials away, but that he did not use tools. However, claimant admitted that, as of the September 2021 IME, he was using tools such as screw guns and shovels. Throughout the relevant time, claimant also worked for his own construction company, which involved sheet rock repairs and installation, painting and using tools such as hammers, screw guns and circular saws. Claimant confirmed that his right hand is his dominant hand. Menkin and Loguidice testified, consistent with their reports regarding permanency, MMI and SLU, that goniometer testing reflected range of motion deficits in claimant's right wrist. Loguidice testified that, at the time of the IME, he was not aware that claimant was diagnosed with, or treated for, bilateral carpal tunnel syndrome, or that he was working in construction, as claimant did not disclose those facts during the examination.
A Workers' Compensation Law Judge (hereinafter WCLJ) concluded that although Menkin and Loguidice both found that claimant's injuries were permanent and that he had sustained a 73&frac13;% SLU to his right wrist, neither was aware of claimant's bilateral carpal tunnel syndrome diagnosis, testing and treatment, which may have impacted their findings as to permanency and range of motion limitations, and the record is unclear as to whether that condition was related to, or a cause of, claimant's 2019 right wrist injury and his 2020 surgery. The WCLJ also found that claimant did not commit fraud, but his testimony about his ongoing work activities for the employer and in his independent construction work was inconsistent with the medical testimony regarding claimant's limited range of motion and capabilities. Accordingly, the WCLJ concluded that the medical opinions could not be credited and that any finding regarding permanency, MMI and an SLU award with regard to claimant's right wrist was premature.[FN2] The Workers' Compensation Board affirmed, and claimant appeals.
We affirm. "An SLU award is designed to compensate an injured worker for the loss of earning power or capacity that is presumed to result, as a matter of law, from permanent impairments to statutorily-enumerated body members" (Matter of Villagil v Sauce Pizzeria III, LLC, 222 AD3d 1154, 1154 [3d Dept 2023] [internal quotation marks and citations omitted]). "Whether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve, and the Board's determinations in this regard, if supported by substantial evidence in the record as a whole, will not be disturbed" (Matter of Ward v NYC Tr. Auth., 214 AD3d 1277, 1279 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Strack v Plattsburgh City Sch. Dist., 202 AD3d 1193, 1194 [3d Dept 2022]). To the extent that claimant argues that the medical experts' consistent SLU opinions entitle him to an SLU award, "this Court consistently has held that [*3]though the Board may not fashion its own expert medical opinions, it may reject medical evidence as incredible or insufficient even where no opposing medical proof is presented" (Matter of Marcellino v National Grid, 213 AD3d 1094, 1095 [3d Dept 2023] [internal quotation marks and citations omitted]).
The testimony established that, at the time of their permanency examinations, neither Menkin nor Loguidice was made aware of claimant's concurrent diagnosis, testing and treatment for bilateral carpal tunnel syndrome. Notably, both physicians made certain findings upon examining claimant's right hand that were consistent with carpal tunnel but, unaware of such diagnosis, did not evaluate claimant for that condition or consider it in rendering their opinions. Although Loguidice opined that carpal tunnel would generally "[n]ot really" affect range of motion, he agreed that it would affect strength, pain and sensation. Menkin did not address the effect of carpal tunnel on his permanency opinion. In an October 2021 report, Menkin opined that claimant's bilateral carpal tunnel syndrome was caused by "repetitive use of [a] jackhammer" and diagnosed him with, among other conditions, right hand pain and "severely restricted [range of motion]"; however, Menkin did not indicate whether claimant's ongoing symptoms were attributable to the 2019 accident, to the bilateral carpal tunnel syndrome, or to both. The foregoing supports the Board's finding that the permanency opinions of Menkin and Loguidice are not credible and that the evidence is insufficient to conclusively determine whether claimant's wrist injury was causally related to his work, rather than caused by the carpal tunnel; consequently, MMI is not clearly established and the claim is not ripe for an SLU determination.
We also reject the carrier's contention that, under the 2018 Medical Treatment Guidelines, claimant's bilateral carpal tunnel syndrome had no effect on the SLU calculation for his 2019 injury. Given the inconclusive evidence regarding the relationship between the bilateral carpal tunnel syndrome and the 2019 wrist injury, and claimant's ongoing hand and wrist treatment, the Board found that MMI was not clearly established — a prerequisite for an injury to be schedulable under the guidelines (see New York Workers' Compensation Guidelines for Determining Impairment § 1.5 [3] at 8 [2018]; Matter of Kondylis v Alatis Interiors Co., Ltd., 116 AD3d 1184, 1186 [3d Dept 2014]). Further, although the guidelines contain specific provisions for calculating an SLU award for carpal tunnel syndrome and other hand and wrist injuries based upon range of motion calculations, "overall [SLU awards] of the wrist" must first determine whether any special consideration applies; none were established here (New York Workers' Compensation Guidelines for Determining Impairment § 3.4 at 24 [2018]; see New York Workers' Compensation Guidelines for Determining Impairment § 3.5, special consideration 6 at 25 [2018[*4]]). As such, the guidelines do not dictate that this claim for an SLU award is ripe for the wrist injury.
Given the foregoing, the Board's conclusion is supported by substantial evidence that the medical opinions did not consider the concurrent bilateral carpal tunnel diagnosis or whether that condition had any effect on, or shared any relationship to, claimant's wrist injury, making an SLU award premature. Claimant's remaining contentions have been considered and found to be without merit.
Garry, P.J., Egan Jr., Pritzker and Mackey, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: At the hearing, claimant denied that Menkin made that diagnosis but could not recall the name of the physician who did.

Footnote 2: With regard to the separate claim for occupational disease of bilateral carpal tunnel syndrome, which was controverted, the WCLJ found that prima facie medical evidence had not been submitted.